**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America, | Crim. No. 10-120 (PJS/JJK) |
| Plaintiff, | |
| v. | |
| Kingston Sebastian Gaulden, | **REPORT AND RECOMMENDATION** |
| Defendant. | |

Andrew R. Winter, Esq., Assistant United States Attorney, counsel for Plaintiff.

Derek A. Patrin, Esq., Meaney & Patrin, PA, counsel for Defendant.

JEFFREY J. KEYES, United States Magistrate Judge

This matter is before the Court on Defendant Kingston Sebastian Gaulden's Motion to Dismiss (Doc. No. 14). Defendant entitled his motion a "Motion to Dismiss," however, Defendant is not seeking dismissal, he is seeking suppression of evidence based on the validity of the expansion of the scope of the seizure of the initial traffic stop; therefore, this Court construes Defendant's motion as a motion to suppress evidence. Specifically, Defendant seeks to suppress from evidence at trial any physical evidence obtained as a result of the stop, search, and seizure that took place on March 25, 2010, on the grounds that law enforcement officers lacked a reasonable, objective justification to expand the scope of the seizure of the traffic stop by ordering the Defendant to exit and then extracting him, from the vehicle in which he was a passenger. This Court

held a hearing on the motions on May 28, 2010, and received testimony from the two witnesses called by the government, City of Minneapolis Police Sergeants David Pleoger and Daniel McShane. The matter was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. Loc. R. 72.1. For the reasons stated below, this Court recommends that Defendant's motion be denied.

## BACKGROUND

On March 25, 2010, at approximately 6:45 p.m., Sergeant David Pleoger was on duty with his partner Sergeant Daniel McShane, patrolling an area known as being a very high-crime area in Minneapolis, in their marked squad car. Sergeant Pleoger was driving the squad car, and Sergeant McShane was riding passenger. Both officers testified that at the time it was daylight.

While patrolling, the two officers noticed two males sitting in a silver/grey Nissan pick-up truck with Texas license plates, which was parked facing the wrong way on the side of the street. Sergeant Pleoger testified that parking in such a way violates Minneapolis City Ordinance 478.10. The officers drove around the block and then approached the Nissan truck from behind. As the officers approached, the truck pulled away from the curb and then made a northbound turn without signaling, which Sergeant Pleoger testified is a petty misdemeanor. At that time, the officers were approximately one-half block behind the truck. The officers then activated their lights and initiated a traffic

stop. The driver of the truck pulled over without incident, and Sergeant Pleoger parked the squad car approximately twenty feet behind the truck.

Sergeant Pleoger exited the squad car and approached the driver's side door of the truck. Sergeant McShane remained in the squad car to radio in to dispatch their position, and then exited the squad car and approached the truck behind Sergeant Pleoger. Sergeant Pleoger testified that the truck did not have tinted windows and that he could see the occupants from their heads to approximately just below their shoulder blades. As Sergeant Pleoger approached, he saw the person sitting in the passenger seat (identified at the hearing as Defendant) bend over. Sergeant Pleoger testified that this movement caught his eye because when someone bends over like Defendant did it usually means that they are trying to conceal something. At that point, Sergeant Pleoger's focus turned to the passenger and he approached the passenger-side door of the truck at a fast pace. He did not pull his weapon at that time, and he did not indicate to Sergeant McShane that he saw movement in the truck.

Sergeant McShane testified that as he got out of the squad car he also observed the passenger bending down, which indicated to him that the passenger might be trying to conceal something. As Sergeant Pleoger approached the passenger side of the truck, Sergeant McShane followed behind him, with his gun drawn in a ready position.

When Sergeant Pleoger reached the passenger-side door, the window was up. He yelled through the window to Defendant to open the window and

3

door, but Defendant did not comply. Sergeant Pleoger saw that Defendant had turned his body away from him so that he could not see Defendant's face. He also saw Defendant make movements that looked like he was tucking or moving something in his waistband or in the seat, but he could not see Defendant's hands. Sergeant Pleoger also testified that it was his belief that Defendant was hiding a weapon or contraband.

Sergeant Pleoger then opened the door to the truck and told Defendant to step out. When Defendant did not comply, Sergeant Pleoger grabbed Defendant's right arm and ordered him out of the vehicle. Sergeant Pleoger and Defendant then scuffled somewhat as Sergeant Pleoger was trying to pull Defendant from the vehicle. During the scuffle, Sergeant Pleoger saw that nothing was in Defendant's right hand, but he could not initially see Defendant's left hand. But then Sergeant Pleoger saw a black and silver semi-automatic handgun in Defendant's left hand and yelled "Gun!" to Sergeant McShane. As Sergeant Pleoger pulled Defendant from the vehicle, Defendant dropped the gun. Sergeant Pleoger testified that although Defendant was disobedient to his commands and scuffled with him, Defendant did not make any movement toward him that was threatening in any way.

Sergeant McShane testified that he observed that once Sergeant Pleoger got to the passenger side of the truck, Sergeant Pleoger and the passenger started struggling. Then, when Sergeant Pleoger yelled that the passenger had a gun, Sergeant McShane ran up to help get ahold of the passenger and take

4

him down to secure him. The officers then took Defendant to the ground a few feet away from the truck door and handcuffed him.

Sergeant Pleoger testified that during this whole time the driver of the truck was sitting with his hands on the steering wheel and that he looked scared. After the officers handcuffed Defendant, Sergeant Pleoger drew his handgun on the driver, ordered the driver out of the truck, and the driver complied. The officers then pat-searched both Defendant and the driver, and they found that Defendant had approximately $1000 in cash. Sergeant Pleoger testified that at the time he pat-searched Defendant, he considered Defendant under arrest for possession of the handgun. Sergeant McShane testified that the officers then asked Defendant who he was and Defendant gave them his name. Sergeant McShane also testified that Defendant then voluntarily stated that the driver of the truck was trying to rob him. Later, at the jail, the officers found a small amount of marijuana and a scale on Defendant's person. When they turned the property into the property room approximately a half-hour after the arrest, the officers learned that the handgun, which had been in Defendant's possession, was loaded.

Defendant was subsequently indicted for Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code, Sections 922(g)(1) and 924 (a)(2).

## DISCUSSION

Defendant asserts that the police unlawfully expanded the scope of the traffic stop of the Nissan pickup truck of which he was a passenger without

5

sufficient justification on March 25, 2010.  Specifically, Defendant alleges that Sergeant Pleoger's command to exit the vehicle and subsequent forcible extraction of his person without reasonable, objective justification went above the level of intrusion justified by a routine traffic stop.  Defendant moves to suppress the evidence obtained as a result of the subsequent search and seizure.

Defendant bases his suppression motion solely on Minnesota state law.  He alleges that the officers' actions of ordering him out of the vehicle and subsequent extraction violated Article I, Section 10 of the Minnesota Constitution, as interpreted by Minnesota state courts.  However, the Supreme Court in *Elkins v. United States*, 364 U.S. 206 (1960) and *Preston v. United States*, 376 U.S. 364 (1964), considered the issue of the admissibility of evidence obtained by state officers and used against a defendant in a federal trial.  These cases analyzed the issue in the context of evidence seized by state officials in violation of the Fourth Amendment.  *United States v. Moore*, 956 F.2d 843, 846 (8th Cir. 1992).  The court held that in "determining whether state officers effected an unreasonable seizure," the seizure is to be judged as if it had been made by federal officers, and the test is one of federal law.  *Id*. at 853 (quoting *Elkins*, 672 F.2d 574 at 223-24).  The Court stated that the "purpose of imposing a federal standard of admissibility in federal proceedings is to prevent admission of evidence in a federal criminal trial that was seized by state agents in violation of the defendant's federal constitutional rights." *Id.* (quoting *Elkins*, 672 F.2d at 222).  *Elkins* has also been cited in cases that have held that evidence that is

seized by state officers in accordance with the Fourth Amendment will not be suppressed in federal court because state law was violated. *Moore*, 956 F.2d at 847; *see United States v. Eng,* 753 F.2d 683, 686 (8th Cir. 1985); *United States v. Montgomery*, 708 F.2d 343, 344 (8th Cir. 1983). These cases are based on the proposition that, "states are not free to impose on Federal courts requirements more strict than those of the Federal law or Constitution." *Moore*, 956 F.2d at 847 (quoting *United States v. Combs*, 672 F.2d 574, 578 (6th Cir. 1982)). Therefore, the Fourth Amendment and U.S. Constitutional jurisprudence is controlling here, not Minnesota state law, and we will analyze Defendant's suppression motion under applicable federal law principles.[1]

The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *United States v. Roby*, 122 F.3d 1120, 1123 (8th Cir. 1997). A roadside traffic stop "is well established" as a "'seizure' within the meaning of the Fourth Amendment." *United States v. Jones,* 269 F.3d 919, 924 (8th Cir. 2001) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)); *see also United States v. Martinez-Fuerte,* 428 U.S. 543, 556-58 (1976); *United States v. Brignoni-Ponce,* 422 U.S. 873, 878 (1975). In addition, a passenger in a motor vehicle has the same standing as the driver to challenge the legality of the stop. *Brendlin v. California*, 551 U.S. 249, 255-56 (2007).

---

[1] Because our analysis is confined to federal law, this court has made no determination of whether or not Minnesota law was violated in the seizure or search of Defendant.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Terry v. Ohio,* 392 U.S. 1, 30 (1968); *see also United States v. Bell,* 480 F.3d 860, 863 (8th Cir. 2007). The police officer must have "a particularized and objective basis" for suspecting criminal activity. *Bell*, 480 F.3d at 863 (quoting *United States v. Jacobsen,* 391 F.3d 904, 906 (8th Cir. 2004)). Such suspicion may not be based on an inchoate or unparticularized suspicion or hunch, but must be grounded on facts, which, in light of the officer's experience, support specific, reasonable inferences that justify the intrusion. *Terry,* 392 U.S. at 22. "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." *Bell*, 480 F.3d at 863 (quoting *United States v. Maltais,* 403 F.3d 550, 554 (8th Cir. 2005)). When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his or her suspicions. *United States v. Johnson*, 64 F.3d 1120, 1124 (8th Cir. 1995).

Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *United States v. Ortiz-Monroy*, 332 F.3d 525, 529 (8th Cir. 2003) (quotations omitted). Even innocent actions may give rise to reasonable suspicion if they warrant consideration under

8

the totality of the circumstances. *See United States v. Condelee*, 915 F.2d 1206, 1209 (8th Cir. 1990) (stating that "there could be 'circumstances in which wholly lawful conduct might justify the suspicion that criminal activity was afoot'") (quoting *Reid v. Georgia*, 448 U.S. 438, 441 (1980)). If an investigatory stop is not justified by reasonable suspicion, any evidence derived from the stop is inadmissible at trial. *See United States v. Wheat,* 278 F.3d 722, 726 (citing *Wong Sun v. United States,* 371 U.S. 471, 484 (1963)).

"[A]ny traffic violation, even a minor one, gives an officer probable cause to stop the violator. [In such a case,] the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." *Johnson v. Crooks*, 326 F.3d 995, 998 (8th Cir. 2003) (alteration in original) (quotations omitted); *United States v. Walker*, 555 F.3d 716, 720 (8th Cir. 2009) ("[A]ny traffic violation provides probable cause for a traffic stop.").[2] "[U]nder U.S. Constitutional jurisprudence, an officer can order the driver and passengers out of a vehicle after making an initial traffic stop with no further justification for doing so." *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1996). The Supreme Court justifies this intrusion by balancing the interest of officer safety against the personal liberty of the vehicle occupants. *Id.* at 413.

Further, police officers conducting investigative stops "may take steps reasonably necessary to protect their personal safety." *United States v.*

---

[2]   Here, Defendant does not challenge the legality of the initial traffic stop, instead, he challenges the expansion of the scope of the initial traffic stop.

9

*Stachowiak*, 521 F.3d 852, 855 (8th Cir. 2008). And, pat-down searches upon or after arrest is allowed. *Weeks v. United States*, 323 U.S. 383, 392 (1914) (stating that one of the exceptions to the warrant requirement is a "search incident to a lawful arrest").

It is undisputed that the vehicle in which Defendant was a passenger had made two separate traffic violations, which justified the initial stop. Under *Maryland v. Wilson*, the officers did not need further justification for ordering Defendant out of the vehicle. For this reason alone, Defendant's motion should be denied.

But further, after the officers made a valid traffic stop of the Nissan truck and approached the vehicle from behind, they noticed the passenger, later identified as Defendant, bend over, which in their experience normally happens when a person is trying to stash something, and which, in most cases, involves contraband or a weapon. Sergeant Pleoger's decision to approach the passenger rather than the driver, which was not normal practice, and the observations he made during his approach, demonstrate his reasonable concern regarding Defendant's movement. When Sergeant Pleoger reached the passenger-side door, the Defendant had turned away from him so that Sergeant Pleoger could not see his face, and he did not respond to Sergeant Pleoger's commands to open the window and door. And, Sergeant Pleoger observed Defendant making movements that looked like he was tucking or moving

something in his waistband or in the seat, and Sergeant Pleoger could not see Defendant's hands.

This Court is required to give law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." *United States v. Washington*, 109 F.3d 459, 465 (8th Cir. 1997) (citations omitted). Considering the totality of the circumstances that were known to Officer Pleoger, he had reasonable suspicion to order Defendant to exit the vehicle and subsequently extract Defendant from the truck because Defendant's conduct suggested that Defendant was trying to conceal either contraband or a weapon. Additionally, after Sergeant Pleoger approached the Defendant, and Defendant did not respond to his request to open the door and window, Defendant continued to face away from Sergeant Pleoger so that he could not see Defendant's face or hands, which reasonably heightened Sergeant Pleoger's suspicion that Defendant was attempting to conceal either contraband or a weapon. Based on these facts, Sergeant Pleoger's seizure was supported by a particularized and objective basis for suspecting that criminal activity was afoot. Then, the officers conducted a search of Defendant after they had removed him from the vehicle and placed him under arrest for the possession of the firearm. Under the warrant exception articulated in *Weeks*, the evidence obtained from the search is admissible because it was collected following a lawful arrest.

Accordingly, this Court finds no Fourth Amendment violation in the stop, search, and seizure that took place on March 25, 2010. Therefore, this Court recommends that Defendant's motion to suppress be denied.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion to Dismiss (i.e., Motion to Suppress) (Doc. No. 14), be **DENIED**.

Date: June 14, 2010

                                        *s/Jeffrey J. Keyes*
                                        JEFFREY J. KEYES
                                        United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 21, 2010**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief on or before **June 28, 2010**.[3] All briefs filed under this rule shall be limited to 3500 words. A judge shall make a de novo determination of those portions of the Report to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within **ten days** of receipt of the Report.

---

3    At the hearing, the parties agreed that the Court could impose a shortened objection period.